COURT OF APPEALS
DECISION
DATED AND FILED

July 31, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1631**

Cir. Ct. No. **2023CV258**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

THOMAS REISS,

  PLAINTIFF-RESPONDENT,

 V.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,
WISCONSIN NATURAL RESOURCES BOARD, AND
STEVEN LITTLE,

  DEFENDANTS-APPELLANTS.

APPEAL from an order of the circuit court for Jefferson County: BENNETT J. BRANTMEIER, Judge. *Reversed and cause remanded with directions.*

Before Blanchard, Kloppenburg, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The Wisconsin Department of Natural Resources, the Wisconsin Natural Resources Board, and Steven Little (collectively, "the Department") appeal a circuit court order granting summary judgment in favor of Thomas Reiss, and denying summary judgment in favor of the Department. Pursuant to its summary judgment decision, the court issued both declaratory and injunctive relief which, in part, prohibits the Department from issuing public information regarding a so-called "feet wet" policy set forth in several guidance documents, which Reiss argues contain the Department's erroneous interpretation of the public trust doctrine and various corresponding statutes. Reiss's complaint states two claims for relief based on WIS. STAT. § 227.40(1) and (4)(a) (2023-24),[1] which provide an avenue for judicial review of administrative actions, and he states one claim for declaratory relief based on WIS. STAT. § 806.04, which provides an avenue to obtain judicial declarations of rights and remedies.

¶2 We conclude that the circuit court erroneously granted summary judgment in favor of Reiss as to the two claims based on WIS. STAT. § 227.40(1) and (4)(a) because Reiss lacks standing to bring them. The court also erroneously granted summary judgment in favor of Reiss on the claim based on WIS. STAT. § 806.04 because Reiss has not demonstrated that sovereign immunity permits it. Accordingly, for all three claims, we reverse the order granting summary judgment in Reiss's favor and denying summary judgment in the Department's favor, and remand with directions that the circuit court grant summary judgment on all three claims in favor of the Department and dismiss the action.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

## BACKGROUND

¶3      There are no facts in dispute.  The following summary is derived from the parties' summary judgment materials.  We add additional facts as needed in the discussion section below.

¶4      Thomas Reiss owns real property used for residential and agricultural purposes, a portion of which abuts the Rock River.  When the Rock River has flooded periodically, portions of Reiss's private property have become saturated and standing water accumulated.  On some occasions when this has occurred, Reiss asserts that members of the public aboard airboats have entered onto Reiss's private property, sometimes hundreds and up to thousands of feet beyond the bank of the Rock River, "throttling unmuffled engines, shining flood lights, shooting guns in the dark" outside of lawful times, and cutting Reiss's barbed wire fences to facilitate airboat passage.  On one occasion during such a periodic flooding event, Reiss asserts that he discovered two airboat users trying to dig out a section of Reiss's driveway to facilitate airboat passage.[2]  Reiss asserts that, when they have been challenged or questioned in some way, airboat users have referred to guidance documents issued by the Department that were then available on the Department's website that contain a "feet wet" policy.  In Reiss's view, these guidance documents indicate that members of the public recreating on the Rock River are permitted to enter Reiss's private property, traverse across his

---

[2] Reiss does not provide specific dates for the asserted flooding occurrences and intrusions onto his property by airboat users.  Attached to his supplemental affidavit in support of his summary judgment motion is an aerial photograph of what Reiss represents is one such flooding occurrence in 2008.

land and engage in the activities to which Reiss objects as long as they keep their "feet wet."[3]

¶5    Reiss's attempts to obtain assistance from law enforcement deputies to curtail these activities were unsuccessful.  Reiss avers that he was told by the Jefferson County Sheriff's Office that they cannot and did not cite the airboat users or other members of the public for trespass because of the feet wet policy in the Department's guidance materials.  Reiss then made what he considered to be unsuccessful efforts to resolve his concerns with the Department directly.

¶6    Reiss then initiated this action, seeking declaratory judgments and other relief, and alleging the following:

- Count One.  Pursuant to WIS. STAT. § 227.40(4)(a), the Department's guidance documents are invalid because they violate Wisconsin law by expanding the public trust doctrine beyond navigable waters and exceeding the Department's statutory authority;

- Count Two.  Pursuant to § 227.40(4)(a), the Department's regulation of non-navigable private land adjacent to navigable waters constitutes invalid rulemaking;[4] and

---

[3] We observe that the phrase "feet wet" is loosely metaphorical, and in some instances, not literal.  For example, "feet wet" is intended to include the situation in which someone has dry feet because the person is in a boat that is floating on navigable water, so that getting out of the boat would result in wet feet.

- Count Three. Pursuant to WIS. STAT. § 806.04, the Department cannot permit or promote public access to property beyond the Ordinary High Water Mark (OHWM) of rivers regardless of whether members of the public "keep their feet wet," because to do so violates various sections of WIS. STAT. ch. 30.

¶7 Supporting all three claims, Reiss argues that the guidance documents set forth a feet wet policy that "expand[ed] public access rights under the public trust doctrine, beyond the OHWM of navigable waters, to adjacent non-navigable property," with the result that members of the public have engaged in activities on his private property during periodic flooding events as long as they kept their "feet wet" (that is, their feet would get wet if they got out of the boat at that spot). Reiss further argues that the guidance documents have caused "rampant ongoing trespass on Reiss's lands above the OHWM during flood conditions."

¶8 Each party moved for summary judgment, agreeing that no material facts are in dispute relative to either of their motions for summary judgment.

¶9 In support of its summary judgment motion, the Department argued, in pertinent part, that Reiss lacks standing to bring his declaratory judgment claims

---

[4] For purposes of context and ease of discussion, we clarify that Count Two in Reiss's complaint also refers to WIS. STAT. § 806.04 in its heading, but makes no reference to that statute in the allegations in that count, and on appeal Reiss does not develop an argument that Count Two is based on § 806.04. Also, Reiss does not contest that his request for a declaratory judgment under § 806.04 concerning his argument that the guidance documents are an unlawful or unpromulgated rule is barred by sovereign immunity, and we conclude that Reiss has conceded the correctness of the Department's argument on this point. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979) ("Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute." (citation omitted)). All that said, given our conclusions that Reiss lacks standing under WIS. STAT. § 227.40(4)(a) and is barred under sovereign immunity from obtaining a declaratory judgment under § 806.04, the result would be the same regardless of how Count Two is construed.

pursuant to WIS. STAT. § 227.40(1) and (4)(a) because he has failed to show that the guidance documents caused or threaten to cause direct injury to him. The Department also argued that Reiss's WIS. STAT. § 806.04 declaratory judgment claim is barred by sovereign immunity.

¶10 The circuit court agreed with Reiss across the board and granted summary judgment in Reiss's favor on each of his three claims. Specifically, the court interpreted the guidance documents to state a "feet wet" policy that: violates the Wisconsin Constitution and exceeds the Department's authority; is an unpromulgated rule; and misinterprets, misconstrues and misapplies WIS. STAT. §§ 30.10 and 30.132. The court granted declaratory and injunctive relief to Reiss, including that the Department cease offering or disseminating publications that promote the "feet wet" policy or otherwise improperly expand the Department's jurisdiction and public access rights above the OHWM, and that any materials or rule issued by the Department must be consistent with the court's interpretations of Wisconsin law.

¶11 The Department appeals.

## STANDARD OF REVIEW

¶12 We review a circuit court's summary judgment decisions independently, *Wisconsin Mfrs. and Com., Inc. v. DNR*, 2025 WI 26, ¶21, 416 Wis. 2d 561, 21 N.W.3d 718, applying the standards set forth in WIS. STAT. § 802.08. Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." § 802.08(2). Both Reiss and the Department agree that this case is appropriate for summary judgment, there being

no material facts in dispute under the specific arguments presented by each side for summary judgment. Therefore, we examine whether either Reiss or the Department is entitled to summary judgment as a matter of law.

## DISCUSSION

¶13 As stated, in pertinent part here, the Department renews its arguments that (1) Reiss lacks standing pursuant to WIS. STAT. § 227.40(1) and (4)(a) to challenge the validity of the Department's guidance documents because he has not shown that any alleged injury was directly caused, or is threatened to be caused, by the guidance documents; and (2) the Department has sovereign immunity for claims under the general declaratory judgment statute set forth in WIS. STAT. § 806.04. Therefore, the Department argues, the circuit court erred in granting summary judgment in favor of Reiss and instead, should have granted summary judgment in favor of the Department and dismissed all three claims.

¶14 We conclude, for the reasons that follow, that Reiss lacks standing to bring his WIS. STAT. § 227.40 claims seeking declaratory judgments and other relief. Further down, we explain why we separately conclude that Reiss has not demonstrated that the state has consented to being sued for declaratory judgment and other relief concerning the validity of the guidance documents under WIS. STAT. § 806.04. Therefore, sovereign immunity applies to bar that claim.

¶15 Accordingly, we reverse the circuit court's order granting summary judgment on these claims in favor of Reiss and denying summary judgment on these claims in favor of the Department. Because summary judgment in the Department's favor should have been granted on all three claims as a matter of law, Reiss's case should have been dismissed by the circuit court. We remand for the entry of an order consistent with our conclusions.

### I.    Standing

¶16    As noted, Reiss seeks declaratory judgment pursuant to WIS. STAT. § 227.40(1) and (4)(a) based on his claims that the guidance documents violate the Wisconsin Constitution and exceed the Department's authority (Count One) and that the guidance documents constitute invalid rulemaking (Count Two). *See* § 227.40(1) ("[T]he exclusive means of judicial review of the validity of a … guidance document shall be an action for declaratory judgment as to the validity of the … guidance document."); *see also* § 227.40(4)(a) ("In any proceeding pursuant to this section for judicial review of a … guidance document, the court shall declare the … guidance document invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated or adopted without compliance with statutory rule-making or adoption procedures.").

¶17    In order to invoke the jurisdiction of Wisconsin courts, plaintiffs must show that they have standing to bring their claims. The standing of a party is an issue of law which we review independently. *City of Mayville v. DOA*, 2021 WI 57, ¶15, 397 Wis. 2d 496, 960 N.W.2d 416.

¶18    It is well established that the law of standing in Wisconsin should not be construed narrowly or restrictively, but "liberally." *See Friends of Black River Forest v. Kohler Co.*, 2022 WI 52, ¶19, 402 Wis. 2d 587, 977 N.W.2d 342 (citation omitted). We apply a two-prong test for determining standing to challenge an agency action under Chapter 227 of the Wisconsin statutes: (1) whether the defendant's conduct "directly cause[d]" the plaintiff an "injury-in-fact," and (2) whether the alleged injury is "to a legally protected interest." *Friends of Black River Forest*, 402 Wis. 2d 587, ¶¶2, 18, 20 (citation omitted).

On summary judgment, a petition must show both prongs. *Id.*, ¶2; *see also* WIS. STAT. § 802.08(2). The magnitude of the injury directly caused by agency action is not determinative of standing, but the fact of injury is. *Fox v. Wisconsin DHSS*, 112 Wis. 2d 514, 525, 334 N.W.2d 532 (1983). When an action directly caused injury to a legally protected interest is demonstrated, "even a trifling interest may suffice to confer standing." *City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 230, 332 N.W.2d 782 (1983).

¶19 The Department argues that Reiss failed to show on summary judgment that the contents of the guidance documents caused, or threaten to cause, any direct injury to Reiss's rights or interests.

¶20 Reiss argues that the information in the Department's guidance documents caused third-parties to unlawfully enter onto and trespass across his private property when standing water accumulated from periodic flooding events.

¶21 We conclude that, although standing is to be liberally construed, Reiss has failed to show that the guidance documents and the feet wet policy directly caused an injury in fact to him, or threaten to cause him a direct injury, by interfering with or impairing his legal rights and privileges. *See* WIS. STAT. § 227.40(1).

¶22 The arguments presented by each party require us to pause here to provide some general background about the "public trust doctrine," the interpretation of which underlies the dispute between the parties.

A. The Public Trust Doctrine

¶23 The "public trust doctrine" is based on Article IX, Section I of the Wisconsin Constitution. This provision states:

> The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor.

Thus, the constitution requires that the navigable waters of the state be "forever free" and that the State hold these waters in trust for public use. "Navigable waters" include lakes, streams, sloughs, bayous, and marsh outlets. *See* WIS. STAT. § 30.10(1) ("All lakes wholly or partly within this state which are navigable in fact are declared to be navigable and public waters."); *see also* § 30.10(2)(a) (Generally, "all streams, sloughs, bayous, and marsh outlets, which are navigable in fact for any purpose whatsoever, are declared navigable."). It is well established in case law that "[n]avigable waters are public waters." ***Diana Shooting Club v. Husting***, 156 Wis. 261, 271, 145 N.W. 816 (1914).

¶24 The bodies of water considered to be "navigable in fact" have expanded over time. The term "navigable in fact" first included only public waters through which commercially-floated timber could pass, but it now includes any public waters on which any "boat, skiff, or canoe, of the shallowest draft [may be] used for recreational purposes." ***Muench v. Public Service Comm'n***, 261 Wis. 492, 505-06, 53 N.W. 2d 514 (1952) ("any stream is *'navigable in fact'* which is capable of floating any boat, skiff, or canoe, of the shallowest draft used for recreational purposes" (emphasis in original)). Although "navigability" need not be the usual condition of a body of water, it must be a recurring condition of the water, or not a rare event:

> [T]he test is whether the stream has periods of navigable capacity which ordinarily recur from year to

> year, *e.g.*, spring freshets, or has continued navigable long enough to make it useful as a highway for recreation or commerce. The test is not whether the stream is navigable in a normal or natural condition, but whether it is in some sense permanently navigable, *i.e.*, regularly recurring or of a duration sufficient to make it conducive to recreational uses.

*Village of Menomonee Falls v. DNR*, 140 Wis. 2d 579, 587, 412 N.W.2d 505 (Ct. App. 1987) (quoting *DeGayner & Co. v. DNR*, 70 Wis. 2d 936, 946-47, 236 N.W.2d 217 (1975)).

¶25 Navigability in fact is the basis for the state's regulatory and enforcement jurisdiction over public waters, which the legislature has delegated to the Department. *See id.* at 591; *see also Klingeisen v. DNR*, 163 Wis. 2d 921, 931, 472 N.W.2d 603 (Ct. App. 1991); *ABKA Ltd. Partnership v. DNR*, 2002 WI 106, ¶¶11-12, 255 Wis. 2d 486, 648 N.W.2d 854. The Department has broad authority to regulate and enforce the public trust doctrine through several chapters of the Wisconsin Statutes, including, as relevant here, Chapter 30. *See ABKA Ltd. P'ship*, 255 Wis. 2d 486, ¶¶11-12 (WIS. STAT. ch. 30 "embodies a system of regulation of Wisconsin's navigable waters pursuant to the public trust doctrine," and "[t]he legislature has delegated to the [Department] broad authority to regulate under the public trust doctrine and to administer ch. 30."). It follows that the state, and by extension the Department, does not have regulatory and enforcement jurisdiction under the public trust doctrine if a body of water is not navigable, which is a pertinent distinction here.

¶26 The state's obligation to hold the beds underlying navigable waters in trust of all of its citizens is subject to the qualified rights of the riparian owner— a person who owns or possesses uplands that abut a navigable waterway. WIS. STAT. § 30.132(2); *see Muench*, 261 Wis. at 501-02. The bundle of rights of the

11

riparian landowner are referred to as riparian rights. ***Mayer v. Grueber***, 29 Wis. 2d 168, 173-74, 138 N.W.2d 197 (1965). Concerning rivers, the riparian owner holds title to the thread (the geographical center) of the river. ***Id.*** at 173. However, "[t]he owner of the submerged soil of a running [river] does not own the running water," ***Munninghoff v. Wisconsin Conservation Commission***, 255 Wis. 252, 259, 38 N.W.2d 712 (1949), and "has no property rights in the particles of water flowing over the bed of the waterway and cannot maintain a trespass action against a member of the public who uses the water flowing over the [bed]." ***Klingeisen***, 163 Wis. 2d at 928. The riparian owner's title is a qualified one, entirely subordinated to and consistent with "the rights of the state to secure and preserve to the people the full enjoyment of navigation and the rights incident thereto." ***Diana Shooting Club****,* 156 Wis. at 269; *see also* ***Muench***, 261 Wis. at 501-02.

### B. Directly Caused Injury-in-Fact

¶27 With these principles in mind, we now consider whether Reiss in his summary judgment materials has shown the first prong, an injury-in-fact, of the standing inquiry—whether the Department's conduct in issuing the guidance documents has directly caused Reiss, or threatens to directly cause Reiss, an injury. *See* ***Friends of Black River Forest***, 402 Wis. 2d 587, ¶¶2, 18; WIS. STAT. § 227.40(1), (4)(a); *see also* WIS. STAT. § 802.08(2).

¶28 The Department argues that on summary judgment Reiss failed to meet this injury-in-fact prong of the standing inquiry. We agree on several grounds, and therefore we do not need to reach the second prong of the standing inquiry requiring the showing of a protected legal interest.

12

¶29    The language to which Reiss objects in the guidance documents does not result, as he asserts, in unlawfully expanding the public trust doctrine by, as Reiss argues, "authoriz[ing] public access deep into his wetlands, thousands of feet above the OHWM, and outside the Rock River's riverbanks and riverbed," or "declaring recreationists are *not trespassing* when flood waters sit atop Reiss's uplands and recreationists 'keep their feet wet' thereon." Simply put, there is no language in the guidance documents that states, or could be reasonably construed to state, that Reiss's flooded private property is subject to the public trust doctrine and the feet wet policy. This is because when the sentences and phrases to which Reiss objects in the guidance documents are read in context, it is evident that the guidance documents pertain solely to the public's right to recreate on and keep their "feet wet" in *navigable* waters.

¶30    For example, Reiss points to the following language in the guidance documents to support his point that the content of the documents cause him direct injury:

- "Everyone has the right to use the water to swim, boat or walk as long as they 'keep their feet wet'";

- The "[p]ublic may use [the] area up to the water's edge," which is stated in text appearing within an illustration of a person fishing from a boat;

- As a member of the public "[y]ou need not worry about the location of the OHWM as long as you stay in the water"; and

- Although the ownership of private property extends to the OHWM, the "exclusive use of private property begins at the water's edge[.]" This text appears in an illustration showing a person fishing in the shallow water of a river above the OHWM.

What Reiss omits in his specific references to these excerpted, isolated statements is the context in which they appear, when it becomes evident that these statements pertain to *navigable* waters, not to waters over private property. For instance, Reiss omits one of the guidance document's specific references to the public trust principles that apply only to navigable waters: "As long as you keep your feet wet, you may walk along the shore, swim or boat *in any navigable lake or stream*. You need not worry about the location of the OHWM as long as you stay in the water." (Emphasis added.) Reiss does not mention that, in an illustration of a person fishing above the OHWM in one of the documents, the edge of the water in the illustration is within the bank of the river, not flowing over the bank. In a similar vein, other bulleted statements occur within a document that discusses the public "navigating" a lake or river. The documents also use phraseology that embraces concepts that case law has explicitly adopted in considering the public trust doctrine, such as the following: "On streams the riparian landowner usually owns the bed to the center of the stream, but the public has the right to use the water for activities such as canoeing and fishing." The guidance documents make some references that the principles discussed pertain to "[e]veryone['s] … right" to use public water bodies "to swim, boat or walk as long as they 'keep their feet wet.'" However, the guidance documents discuss all relevant concepts, including the feet wet policy, in the apparent context of navigable lakes and streams, not waters above private property.

¶31 Reiss does not argue that his private property is a lake, stream, slough, bayou, or marsh outlet included in the protections of the public trust. *See* WIS. STAT. § 30.10(1). Reiss's saturated property from a periodic flooding event does not turn the waters over his private property on those occasions into "navigable" waters as defined in our case law when considering the applicability

14

of the public trust doctrine. As stated, navigability-in-fact is "not whether the stream is navigable in a normal or natural condition, but whether it is in some sense permanently navigable, *i.e.*, regularly recurring or of a duration sufficient to make it conducive to recreational uses." *Village of Menomonee Falls*, 140 Wis. 2d at 587 (quoting *DeGayner & Co.*, 70 Wis. 2d at 946-47). A property saturated with standing water from a periodic flooding event does not regularly recur such that it is conducive to recreational use. This court expressly addressed the concerns of private property owners in this general context in *Village of Menomonee Falls*:

> The Village also expresses concern that under a strict navigability in fact test, for which seasonal periods of high water suffice, low-lying, periodically flooded backyards, streets and street gutters, drainage ditches and the like could be considered navigable and thus subject to state regulation. This concern may be allayed by reference to the legislative declaration of navigability. [WIS. STAT. §] 30.10(1) and (2), declares navigable only *lakes, streams, sloughs, bayous,* and *marsh outlets* which are navigable in fact…. We are confident that there need be no fear that flooded backyards and street gutters will be declared navigable waters.

*Id.* at 593 (emphasis in original).

¶32 To further underscore this point, our supreme court long ago concluded that "the trust extends only to land under the stream of the navigable water so long as such land constitutes part of the bed of the stream." *Muench*, 261 Wis. at 503. Water accumulating over private property after periodic flooding from a river does not accumulate over a river bed, and neither the state nor the Department hold that water in trust for the public.

¶33 For these reasons, the public trust doctrine does not extend the rights of public navigation beyond the banks of the Rock River to private land that is not

a navigable river, and the language in the guidance documents cannot be reasonably interpreted or construed to result in such an outcome.

¶34    Another obstacle that Reiss does not overcome on summary judgment is that the injuries he allegedly sustained from the activities of the airboat users or other members of the public, or could sustain in the future, were and are not *caused* by the Department and the guidance documents.  *See Friends of Black River Forest*, 402 Wis. 2d 587, ¶21.  Under WIS. STAT. § 227.40(1), the circuit court is directed to render a declaratory judgment in an action "only when it appears from the complaint and supporting evidence that the … guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff."  Though it is a low bar to meet, Reiss does not meet it because he fails to show that the content of the guidance documents has caused him direct injuries, as opposed to his alleged injuries being caused by the conduct of the third-parties who are trespassing on his land, perhaps enabled to some degree by interpretations made by law enforcement personnel for which the Department is not responsible.

¶35    Reiss asserts that the content of the guidance documents has directly injured him because it has "caused rampant ongoing trespass on Reiss's lands above the OHWM during flood conditions."  Reiss bases this assertion on purported statements to him by airboat users that they believed the feet wet policy and guidance documents allowed them to travel deep into Reiss's flooded private property as long as they kept their "feet wet."  Reiss also asserts that law enforcement deputies have stated that they were precluded from enforcing trespass laws in these instances based on how they interpreted the guidance documents.  Reiss's assertions establish that any direct injury caused to Reiss, *i.e.*, trespass,

was caused by third-parties, and not by the Department or the guidance documents.

¶36    There is no such language in the guidance documents which states that third-parties are allowed to trespass onto saturated private property when it is periodically flooded by a neighboring river, much less to allow trespassers to unlawfully fire guns, cut fences, or dig up driveways.

¶37    That a third-party could misinterpret the guidance documents in an attempt to justify illegal conduct does not establish that Reiss's rights and privileges were directly interfered with or impaired by the guidance documents, so as to warrant a declaratory judgment and other related relief under WIS. STAT. § 227.40(1) and (4)(a).  Reiss cites to no analogous legal authority to support his standing argument in such a context.

¶38    In sum on the issue of Reiss's standing under WIS. STAT. § 227.40, we conclude that he has not shown a direct injury-in-fact, or a future threatened injury-in-fact, as the result of the language in the guidance documents and, therefore, he lacks standing to bring his declaratory judgment claims under that statute.

## II.    Sovereign Immunity

¶39    This leaves Count Three of the complaint and the Department's argument that Reiss's declaratory judgment claim pursuant to the Uniform Declaratory Judgment act in WIS. STAT. § 806.04 is barred by sovereign immunity.  To recap, this involves Reiss's request for declaratory judgment and other relief, pursuant to § 806.04, that the "feet wet" policy is a "misinterpretation, misconstruction, and misapplication" of WIS. STAT. §§ 30.10, 30.132, and 30.134,

17

and that the public does not have the right to recreate or traverse on the "Reiss Upland Wet Areas."

¶40    "Whether a claim is barred by sovereign immunity is a question of law," and we review legal issues independently. *Canadian Nat'l R.R. v. Noel*, 2007 WI App 179, ¶5, 304 Wis. 2d 218, 736 N.W.2d 900.

¶41    We conclude that this claim fails because the legislature has specifically provided that WIS. STAT. § 227.40 is the exclusive remedy available for declaratory judgment when a party challenges the validity of guidance documents, which is, at bottom, the basis for Reiss's declaratory judgment claim pursuant to § 806.04.

¶42    The Wisconsin Constitution bars legal actions against the state unless the legislature expressly consents. WIS. CONST. art. IV, § 27 ("The legislature shall direct by law in what manner and in what courts suits may be brought against the state."); *Brown v. State*, 230 Wis. 2d 355, 364, 602 N.W.2d 79 (Ct. App. 1999). When a party sues a state agency, the suit is against the state for purposes of sovereign immunity. *PRN Associates LLC v. DOA*, 2009 WI 53, ¶51, 317 Wis. 2d 656, 766 N.W.2d 559. If the legislature did not specifically consent to suit and sovereign immunity is properly raised, sovereign immunity deprives the court of personal jurisdiction over the state and state agencies. *Brown*, 230 Wis. 2d at 363 (citing *Lister v. Board of Regents of Univ. of Wis. Sys.*, 72 Wis. 2d 282, 291, 240 N.W.2d 610 (1976)).

¶43    Concerning actions against state agencies, including the Department, the state has consented to be sued under the proceedings set forth in WIS. STAT. ch. 227. The legislature has directed that generally "the exclusive means of judicial review of the validity of a … guidance document shall be an action for

declaratory judgment as to the validity of the guidance document" pursuant to WIS. STAT. § 227.40(1), and a "court shall render a declaratory judgment … only when it appears from the complaint and the supporting evidence that the … guidance document or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff." Indeed, even beyond the use of the phrase "exclusive means" in this last passage, it is more generally true that when "a specified method of review is prescribed by [statute], the method so prescribed is exclusive." *Sewerage Comm'n of Milw. v. DNR*, 102 Wis. 2d 613, 630, 307 N.W.2d 189 (1981). The unambiguous language of the statute establishes that the legislature has explicitly selected the manner in which an action seeking a declaratory judgment may be brought against the state when the validity of guidance documents is challenged. We conclude that Reiss's declaratory judgment claim pursuant to WIS. STAT. § 806.04 that the feet wet policy is the result of the Department incorrectly interpreting Wisconsin law is based on the content, and hence the validity, of the guidance documents. The legislature has clearly indicated that the state has consented to be sued for declaratory judgment based on the validity of guidance documents exclusively under § 227.40.

¶44 We need look no further than Reiss's complaint to conclude that his declaratory judgment claim pursuant to WIS. STAT. § 806.04 rests on his allegation that the Department is misinterpreting law based on the content of the guidance documents: "When defendants promote their Feet Wet Policy in published guidance documents, they are engaging in statutory interpretation.… Defendants' statutory interpretations are incorrect as a matter of law." Simply put, Reiss's complaint leaves no doubt that his declaratory judgment claim pursuant to § 806.04 is aimed at the alleged unlawful content of the guidance documents. In

other words, without the guidance documents that contain the supposed feet wet policy, there is no alleged wrongful statutory or constitutional interpretation on the part of the Department which is in need of invalidating through declaratory judgment in order to protect Reiss's legal rights and privileges. The exclusive means of seeking a declaratory judgment concerning the validity of a guidance document that interferes with, or threatens to interfere with, Reiss's legal rights and privileges is specifically provided for in WIS. STAT. § 227.40(1) and (4)(a).

¶45 Reiss asserts that his declaratory judgment claim pursuant to WIS. STAT. § 806.04 does not "challenge agency actions," but rather "the [Department's] misconstruction, misinterpretation[,] and misapplication of the law" concerning WIS. STAT. ch. 30 and the public trust doctrine. We are unclear about how the asserted challenge differs from challenging the actions of the Department in authoring guidance documents that Reiss asserts are unlawful, and Reiss does not elaborate on this point. Further, the content of the guidance documents provides the basis for Reiss's assertion that the Department is misconstruing, misinterpreting, and misapplying the law. Indeed, we see no daylight between Reiss's declaratory judgment claim brought pursuant to WIS. STAT. § 227.40(4)(a) in Count I, that alleged that the "guidance documents are invalid because they violate Wisconsin law," and his declaratory judgment claim brought pursuant to § 806.04, except that the legislature has designated the former statute as the exclusive remedy for challenging the validity of guidance documents. Reiss fails to develop a persuasive argument to the contrary.

¶46 Reiss cites to *PRN Associates LLC*, 317 Wis. 2d 656, for the proposition that "there is 'legislative consent' for claims like" his Count Three. However, Reiss fails to otherwise develop an argument that *PRN Associates* supports his assertion that the state has explicitly consented to be sued pursuant to

WIS. STAT. § 806.04 under the circumstances presented here, and we reject this argument as undeveloped. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (the court may decline to consider conclusory and undeveloped arguments that are not adequately briefed).

¶47    Reiss appears to be attempting to bypass the exclusive means of judicial review provided by the legislature in refashioning his WIS. STAT. § 227.40 declaratory judgment claim as set forth in Count I in the cloak of a general declaratory judgment claim pursuant to WIS. STAT. § 806.04. But these claims are cut from the same cloth; both are challenges to the validity of the Department's guidance documents. An "[a]dministrative action for which a statutory means of review is provided should not be subject to collateral attack in a different forum or under different procedures." *Sewerage Comm'n*, 102 Wis. 2d at 631. We reject Reiss's attempt to do so here.

¶48    Accordingly, on the issue of Reiss's declaratory judgment claim pursuant to WIS. STAT. § 806.04, for the reasons stated, we reverse the circuit court's order granting summary judgment in Reiss's favor and denying the Department's summary judgment motion.

¶49    In sum on all of the issues presented in this appeal, we conclude that summary judgment in favor of Reiss was in error, and the denial of the Department's summary judgment motion was in error. More specifically, the Department is entitled to summary judgment, and the dismissal of the action.

## CONCLUSION

¶50 For the reasons set forth above, we reverse the circuit court's summary judgment order in every respect. We remand to the circuit court to enter orders consistent with our conclusions.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.